## In the Matter of the Estate of FRANSISZEK ZIEMBA, Deceased.

Surrogate's Court, Kings County, January 21, 1938.

*Mathias Naphtali*, for the petitioner Philip Munter, as receiver of Peter Ziemba, judgment debtor, legatee.

*Harry Wishnew*, for respondent Nellie Vogel, as executrix, etc.

WINGATE, S. The basic issue in this proceeding concerns the status of the petitioner as a person authorized to maintain a proceeding for a compulsory accounting against an executrix. The facts present an apparently novel situation, and, so far as the court deems them material, they are wholly undisputed.

The present decedent died on August 29, 1931, survived by a widow and eight children, four girls and four boys, of whom the latter were all infants, the eldest of the boys, Peter, having been born on June 29, 1914. His will, which was admitted to probate on November 13, 1931, purported to bequeath $500 to each of the four infant sons and to leave the balance of the estate to the eight children in equal shares. Nellie Vogel, one of the daughters, was named executrix, and duly qualified as such.

On September 7, 1934, all of the beneficiaries, including the infants, for whom no general guardians had been appointed, conveyed their interests under the will to Nellie Vogel individually. The reason for the conveyance was that she had personally cared for the decedent and at least some of the infants, and undertook to pay all expenses of the estate, which possessed problematical value. The present concern is with the conveyance of Peter, who at that time had attained the age of twenty years two months and nine days. This conveyance was duly recorded on November 28, 1934, in liber 5411 of Conveyances, page 366. At the time of such conveyance Peter had no creditors and no actions were pending against him.

At some undisclosed date Peter adopted the occupation of a chauffeur and at some time in or about the year 1937 became involved in an accident, as a result of which a judgment was, on February 15, 1937, recovered against him in the City Court for the sum of $534.82. Proceedings supplementary to this judgment were instituted against him, and the present petitioner was appointed receiver therein on April 23, 1937.

It will be observed that Peter became of age on June 29, 1935. Subsequent to obtaining his majority he took no action either of affirmance or disaffirmance in respect to the conveyance effected in September, 1934, of his rights under the will.

The receiver seeks to compel an accounting of the assets of the estate, his assertion of the requisite status in this regard being predicated on three premises, namely, *first*, that the conveyance of his rights having been made by Peter during his infancy it is subject to disaffirmance by him after attaining his majority; *second*, that Peter's non-action in this regard during the period subsequent to his majority does not preclude disaffirmance at this time; and, *third*, that the petitioner, upon his appointment as such receiver, succeeded to Peter's right to disaffirm the conveyance. On the basis of these premises he seeks to urge the conclusion that Peter's interest under the will has vested in him, as such receiver, and that, in consequence, he may maintain the present proceeding.

It will be obvious that, even though all three of the fundamental bases of this syllogism were to be accepted, one link in the chain of argument is missing in the failure of demonstration that the petitioner has exercised the right of disaffirmance which, according to his assertion, has passed to him. This defect would, of course, be fatal to his present proceeding, since, even were his right to disaffirm to be granted, his authority in this regard could not be deemed to transcend that of the former infant himself, who, in order to avoid the transaction, would be obliged to perform some overt act of disaffirmance (*Bool* v. *Mix*, 17 Wend. 119, 135, 136.

*Voorhies* v. *Voorhies*, 24 Barb. 150, 153; *Chapin* v. *Shafer*, 49 N. Y. 407, 413; *Gould* v. *Cayuga County National Bank*, 86 id. 75, 82; *Casey* v. *Kastel*, 237 id. 305, 311; *Joseph* v. *Schatzkin*, 259 id. 241, 243; *O'Donohue* v. *Smith*, 130 App. Div. 214, 217; *Nathan* v. *Karp, Inc.*, 214 id. 490, 491, 492; *Dominick* v. *Michael*, 4 Sandf. 374, 421; *Tomczek* v. *Wieser*, 58 Misc. 46, 47), which, it has been said, must be done "in as solemn and notorious a manner as the act sought to be disaffirmed was performed." (*Eagle Fire Co.* v. *Lent*, 1 Edw. Ch. 301, 303.)

There is no allegation or demonstration in the present record that the petitioner, purporting to act on behalf of the former infant, has ever addressed any communication whatsoever to the transferee or done any act which could in any sense be deemed a disaffirmance, if it be granted that he possessed such right. It follows that on the record as it stands the conveyance is just as valid as it ever was, and even though, on the petitioner's theory, he might possess the authority to acquire some right in the estate, he has not performed the necessary steps to perfect it.

A disposal of the application on this ground would, however, be unsatisfactory as merely dilatory, wherefore the court will consider on the merits the other premises of the syllogism upon which the petitioner's right to relief depends.

The first two unquestionably possess legal validity. It is primary that a former infant, after he attains his majority, may himself disaffirm a conveyance or contract made during infancy (*Casey* v. *Kastel*, 237 N. Y. 305, 311; *Matter of Goodchild*, 160 Misc. 738, 752), and that his failure so to do for a period such as here elapsed will not prevent such subsequent action provided no other pertinent inhibiting events have transpired. (*O'Rourke* v. *Hall*, 38 App. Div. 534, 538.)

This advances the discussion to the real controversial legal issue of whether this right of disaffirmance which the infant possessed was a property right which passed to, and was capable of exercise by, the receiver.

His main legal reliance is found in certain language in *Zouch* v. *Parsons* (3 Burr. 1794, 1804), decided by Lord MANSFIELD at the Michaelmas sittings of the Court of King's Bench in the sixth year of the reign of his majesty George III, which, being translated, signifies Anno Domini 1765. The learned jurist there observes: "We think the law is, as laid down by Perkins: That 'All such gifts, grants or deeds made by infants, which do not take effect by delivery of his hand, are void; but all gifts, grants or deeds made by infants, by matter in deed or in writing, which do take effect by delivery of his hand, are voidable, by himself, by his heirs, and by those who have his estate.'"

On the facts of the case in which the statement was made the last ten words are pure dictum, since the litigation concerned only the rights of disaffirmance of an infant himself who had individually attempted to avoid " his said lease and release " (p. 1795).

The next cited authority is *Conroe* v. *Birdsall* (1 Johns. Cas. 127), decided by the old Supreme Court of this State in 1799. Whereas the opinion cites the *Zouch* case, it is only on the point that the contract of an infant is voidable by him, individually, and this was the only question litigated.

The third citation, which is *Fonda* v. *Van Horne* (15 Wend. 631), decided as recently as 102 years ago, quotes (p. 635) the statement from the *Zouch* case and notes its subsequent question in England. Here, again, no question of a right of disaffirmance by an heir or representative was involved.

His fourth citation is a pronouncement made in 1863 by Hon. Amos G. Hull, then surrogate of Oswego county, in *Nelson* v. *Eaton* (1 Redf. 498), which again cites the *Zouch* language. This decision transcends those previously considered in that it determines that where an infant made a conveyance and died, both events occurring during infancy, his heir at law may subsequently disaffirm the conveyance. This result is attained with reluctance on the supposed authority of the *Zouch* case, of *Fonda* v. *Van Horne*, and the statement of a text writer which appears to be wholly predicated upon the *Zouch* dictum.

The only additional " authority " cited by the receiver is another dictum, in effect similar to that of the *Zouch* case, found in *Dominick* v. *Michael* (4 Sandf. 374, 419), decided by the old Superior Court in January, 1851. Here, again, no question was involved other than the personal right of disaffirmance by a former infant herself.

The only pronouncement of remotely consonant tenor which the rather more than perfunctory research of the court has been able to add to those unearthed by the diligence of counsel is found in *Merchants' Fire Ins. Co.* v. *Grant* (2 Edw. Ch. 544), decided in 1835 by Vice-Chancellor William T. McCoun. This jurist states (at p. 545): " I consider it the settled law of this State, that the deed of an infant is voidable only at his election, when he comes of age, or at the election of his heir or representative, and not absolutely void."

To this statement is appended a note which appears to clarify the meaning of the vice-chancellor in this observation. It reads: " It is a general rule that no one but the infant himself, or his legal representative, can avoid his voidable deed or contract; for, while living, he ought to be the exclusive judge of the propriety of the exercise of a personal privilege intended for his benefit; and, when dead, they alone should interfere who legally represent him."

It appears obvious, therefore, that the thesis for relief of the present petitioner rests upon the statement of some seventeenth or eighteenth century text writer whose identity and attainments have been obliterated in the mists of antiquity. So far as has been discovered this dictum, so far as here remotely pertinent, has only once been applied in a judicial determination, and on that single occasion, with reluctance by the surrogate of Oswego county over three-quarters of a century ago.

That the conception indicated by the note to *Merchants' Fire Ins. Co.* v. *Grant*, above quoted, is the real explanation of the thought underlying the *Zouch* dictum is indicated by a number of cases, some of which possess scarcely less antiquarian interest than those cited by the receiver. These hold that " infancy is a personal privilege, of which no person but the infant can avail himself." (*Slocum* v. *Hooker*, 13 Barb. 536, 537. See, also, *Mason* v. *Denison*, 15 Wend. 64, 65; *Van Bramer* v. *Cooper*, 2 Johns. 279.)

To this may be added the direct determination of the Court of Appeals in *Beardsley* v. *Hotchkiss* (96 N. Y. 201), in which an infant wife made a deed in respect of property and died, after majority, without disaffirmance. The court observes (at p. 211): " Nor even if they could, did her husband or children disaffirm it after her death. There is no rule of law which will allow her husband's assignees or creditors to disaffirm it. The defense of infancy is for the benefit and protection of infants, and other persons cannot set it up for their own benefit."

The true rule of law in this regard appears, therefore, to be that the right of disaffirmance of a conveyance or contract made by an infant is merely a personal privilege and in no sense a property right. In so far, if at all, as this privilege may be exercised by one other than the infant himself, this may be done only after his death or, perhaps, incompetence, and then only by one who has succeeded beneficially to all rights of the infant by inheritance or bequest.

If the foregoing statement is a correct reflection of the applicable principles of law, it is obvious that the present petitioner, even if he had performed the acts necessary to a disaffirmance, would not have acquired any rights thereby.

The same result is also attainable through another avenue. Under section 807 of the Civil Practice Act, all which is vested in a receiver in supplementary proceedings is " the *property* of the judgment debtor " (italics not in original), which is owned at the time of the filing of the order or is subsequently acquired. (*Dubois* v. *Cassidy*, 75 N. Y. 298, 302; *Masten* v. *Amerman*, 51 Hun, 244, 246; *Matter of Leverich*, 135 Misc. 774, 782; affd., on opinion of this court, 234 App. Div. 625; *Matter of Kitching*, 141 Misc. 704, 708.)

A *personal* right is not " property " within the connotation of this section. This is amply demonstrated by the determination in *Maurice* v. *Travelers Ins. Co.* (121 Misc. 427, 431), which is discussed and affirmed as to this point in *Matter of Gershman* v. *Berliner* (214 App. Div. 196, 197). It is there decided that the right of an insured under a policy of life insurance to change the beneficiary and obtain the surrender value of the policy is not one which passes to a receiver in supplementary proceedings, or of which the latter may avail himself.

Consonant with this decision is that in *Sonnabend* v. *Gittins* (235 App. Div. 483), which determined that, where a judgment debtor had erected a trust for her own benefit under circumstances which permitted her to revoke it, this right did not pass to her receiver in supplementary proceedings in a manner which would enable him to revoke the trust and possess himself of its principal assets.

If such rights as those adjudicated in these cases do not pass to a receiver in supplementary proceedings, it must be obvious as an *a fortiori* matter that the purely personal right of an infant to avoid his conveyance will not pass to such a functionary, and that the present petitioner does not possess the status to institute the instant proceeding. The petition is accordingly denied, with costs.

Enter decree on notice in conformity herewith.